**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| JAMES HUFF and TORRENCE BATES, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | NO. |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | CLASS ACTION COMPLAINT |
| vs. | ) | |
| | ) | JURY DEMAND |
| TELECHECK SERVICES, INC., | ) | |
| TELECHECK INTERNATIONAL, INC. | ) | |
| and FIRST DATA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Come Plaintiffs, individually and on behalf of all other similarly situated persons as defined below, and for their Complaint against Defendants, state the following:

### I.     INTRODUCTION

1.      This action is brought by Plaintiffs against TeleCheck Services, Inc., TeleCheck International, Inc. and First Data Corporation ("Defendants") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*  Plaintiffs bring this action on behalf of themselves and other similarly situated persons as defined below, to redress Defendants' past, present and continuing violations of the FCRA, including but not limited to the provisions contained in 15 U.S.C. § 1681g(a)(1)-(4).

2.      First, in providing consumer disclosures as required under the FCRA to Plaintiff Huff and the nationwide class of consumers defined below (hereinafter "Nationwide File Disclosure Class"), Defendants have and continue to violate the FCRA by refusing or failing to provide the information required under 15 U.S.C. § 1681g(a)(1)-(4), including but not limited to:

a) all information in the consumer's file at the time of the request (15 U.S.C. § 1681g(a)(1)); b) the sources of the information in the consumer's file at the time of the request (15 U.S.C. § 1681g(a)(2)); 3) the names of each person (or trade name of the person, if applicable) who procured a consumer report during the 1-year period preceding the date on which the request was made (15 U.S.C. § 1681g(a)(3)); and 4) the dates, original payees, and amounts of any checks upon which any adverse characterization of the consumer is based, and which is included in the file at the time of the disclosure (15 U.S.C. § 1681g(a)(4)).

3.      In providing disclosures to consumers, including Plaintiff Huff and the Nationwide File Disclosure Class, Defendants utilize a standardized policy, practice and procedure for receiving and processing consumer disclosure requests. Further, Defendants utilize a standardized, uniform file disclosure format when providing disclosures to consumers called the "TeleCheck File Report." When consumers, including Plaintiff Huff and members of the Nationwide File Disclosure Class, request a disclosure from Defendants under the FCRA, Defendants only provide information limited to the identifiers (typically a driver license number and/or bank account number) given to Defendants by the consumers. Defendants routinely refuse or fail to provide *other* file information to Plaintiff Huff and members of the Nationwide File Disclosure Class regarding identifiers that are linked to and/or associated with the consumer, although Defendants actually use this linked and/or associated information when preparing and providing consumer reports to users, such as merchants, banks and landlords. As a result, consumers (including Plaintiff Huff and the Nationwide File Disclosure Class) are given incomplete file information in willful violation of 15 U.S.C. § 1681g(a)(1)-(4).

4.      Second, in providing consumer disclosures as required under the FCRA to Plaintiff Torrance Bates (hereinafter "Plaintiff Bates") and the Class of Tennessee consumers

defined below (hereinafter "Tennessee File Disclosure Class"), Defendants have and continue to violate the FCRA by refusing or failing to provide the information required under 15 U.S.C. § 1681g(a)(1)-(4), including but not limited to: a) all information in the consumer's file at the time of the request (15 U.S.C. § 1681g(a)(1)); b) the sources of the information in the consumer's file at the time of the request (15 U.S.C. § 1681g(a)(2)); 3) the names of each person (or trade name of the person, if applicable) who procured a consumer report during the 1-year period preceding the date on which the request was made (15 U.S.C. § 1681g(a)(3)); and 4) the dates, original payees, and amounts of any checks upon which any adverse characterization of the consumer is based, and which is included in the file at the time of the disclosure (15 U.S.C. § 1681g(a)(4)).

5.     In providing disclosures to Tennessee consumers, including Plaintiff Bates and the Tennessee File Disclosure Class, Defendants utilize the same standardized policy, practice and procedure for receiving and processing consumer disclosure requests discussed in Paragraph 3 of this Complaint, and the standardized, uniform file disclosure format when providing disclosures to consumers called the "TeleCheck File Report" discussed in Paragraph 3 of this Complaint.   When Tennessee consumers, including Plaintiff Bates and members of the Tennessee File Disclosure Class, request a file disclosure, Defendants improperly limit the information provided to Tennessee consumers to either the eight-digit or nine-digit Tennessee driver license number.  For example, if the Tennessee consumer provides Defendants with an eight-digit license number, Defendants only provide information regarding the eight-digit license number, while refusing or failing to give information regarding the nine-digit license number that is identical except for a leading "0" at the beginning of the nine-digit number; and, vice versa. As a result, Tennessee consumers (including Plaintiff Bates and members of the Tennessee File Disclosure Class) are given incomplete file information in violation of 15 U.S.C. §1681g(a)(1)-

3

(4).

6.  In Count I of the Complaint, Plaintiff Huff, individually and on behalf of the Nationwide File Disclosure Class, alleges that Defendants have and continue to willfully violate the FCRA. Plaintiff Huff, individually and on behalf of the Nationwide File Disclosure Class, seeks the following relief: a) a declaratory judgment that Defendants have engaged in a pattern and practice of conduct that violates the FCRA, and specifically, the provisions of 15 U.S.C. § 1681g(a)(1)-(4); and b) a declaratory judgment that Defendants' violations of the FCRA were willful.

7.  Also in Count I of the Complaint, Plaintiff Huff, individually and on behalf of the Nationwide File Disclosure Class, seeks a permanent injunction and other equitable relief necessary to undo the effects of the Defendants' past and current violations of the FCRA, and to prevent such violations from occurring in the future, including, but not limited to, affirmative restructuring of the Defendants' policies, practices and procedures, databases, files and systems in a manner which complies with the provisions of the FCRA, including 15 U.S.C. § 1681g(a)(1)-(4). Plaintiff Huff, individually and on behalf of the Nationwide File Disclosure Class, further seeks other incidental monetary and non-monetary remedies, including but not limited to statutory damages, punitive damages, prejudgment interest, attorneys' fees, costs and expenses.

8.  In Count I of the Complaint, Plaintiff Huff sues on behalf of himself and the Nationwide File Disclosure Class pursuant to Fed. R. Civ. P. 23(a) and one or all of the following Rules of the Federal Rules of Civil Procedure: a) 23(b)(2); b) 23(b)(3); and/or c) 23(c)(4).

9.  In the alternative, in Count II of the Complaint, Plaintiff Huff, individually and on

4

behalf of the Nationwide File Disclosure Class, alleges that Defendants have and continue to negligently violate the FCRA.  Plaintiff Huff, individually and on behalf of the Nationwide File Disclosure Class, seeks the following relief:  a) a declaratory judgment that Defendants have engaged in a pattern and practice of conduct that violates the FCRA, and specifically, the provisions of 15 U.S.C. § 1681g(a)(1)-(4); and b) a declaratory judgment that Defendants' violations of the FCRA were negligent.

10.     Also in Count II of the Complaint, Plaintiff Huff, individually and on behalf of the Nationwide File Disclosure Class, seeks a permanent injunction and other equitable relief necessary to undo the effects of the Defendants' past and current violations of the FCRA, and to prevent such violations from occurring in the future, including, but not limited to, affirmative restructuring of the Defendants' policies, practices and procedures related to consumer disclosures in a manner which complies with the provisions of the FCRA, including 15 U.S.C. § 1681g(a)(1)-(4).  Plaintiff Huff, individually and on behalf of the Nationwide File Disclosure Class, further seeks other incidental non-monetary remedies, including but not limited to attorneys' fees, costs and expenses.

11.     In Count II of the Complaint, Plaintiff Huff sues on behalf of himself and the Nationwide File Disclosure Class, pursuant to Fed. R. Civ. P. 23(a) and one or all of the following Rules of the Federal Rules of Civil Procedure:  a) 23(b)(2); b) 23(b)(3); and/or c) 23(c)(4).

12.     In Count III of the Complaint, Plaintiff Bates, individually and on behalf of the Tennessee File Disclosure Class, alleges that Defendants have and continue to willfully violate the FCRA.  Plaintiff Bates, individually and on behalf of the Tennessee File Disclosure Class, seeks the following relief:  a) a declaratory judgment that Defendants have engaged in a pattern

5

and practice of conduct that violates the FCRA, and specifically, the provisions of 15 U.S.C. § 1681g(a)(1)-(4); and b) a declaratory judgment that Defendants' violations of the FCRA were willful.

13.     Also in Count III of the Complaint, Plaintiff Bates, individually and on behalf of the Tennessee File Disclosure Class, seeks a permanent injunction and other equitable relief necessary to undo the effects of the Defendants' past and current violations of the FCRA, and to prevent such violations from occurring in the future, including, but not limited to, affirmative restructuring of the Defendants' policies, practices and procedures, databases, files and systems in a manner which complies with the provisions of the FCRA, including 15 U.S.C. § 1681g(a)(1)-(4).  Plaintiff Bates, individually and on behalf of the Tennessee File Disclosure Class, further seeks other incidental monetary and non-monetary remedies, including but not limited to statutory damages, punitive damages, prejudgment interest, attorneys' fees, costs and expenses.

14.     In Count III of the Complaint, Plaintiff Bates sues on behalf of himself and the Tennessee File Disclosure Class pursuant to Fed. R. Civ. P. 23(a) and one or all of the following Rules of the Federal Rules of Civil Procedure:  a) 23(b)(2); b) 23(b)(3); and/or c) 23(c)(4).

15.     In the alternative, in Count IV of the Complaint, Plaintiff Bates, individually and on behalf of the Tennessee File Disclosure Class, alleges that Defendants have and continue to negligently violate the FCRA.  Plaintiff Bates, individually and on behalf of the Tennessee File Disclosure Class, seeks the following relief:  a) a declaratory judgment that Defendants have engaged in a pattern and practice of conduct that violates the FCRA, and specifically, the provisions of 15 U.S.C. § 1681g(a)(1)-(4); and b) a declaratory judgment that Defendants' violations of the FCRA were negligent.

6

16.     Also in Count IV of the Complaint, Plaintiff Bates, individually and on behalf of the Tennessee File Disclosure Class, seeks a permanent injunction and other equitable relief necessary to undo the effects of the Defendants' past and current violations of the FCRA, and to prevent such violations from occurring in the future, including, but not limited to, affirmative restructuring of the Defendants' policies, practices and procedures related to consumer disclosures in a manner which complies with the provisions of the FCRA, including 15 U.S.C. § 1681g(a)(1)-(4).  Plaintiff Bates, individually and on behalf of the Tennessee File Disclosure Class, further seeks other incidental non-monetary remedies, including but not limited to attorneys' fees, costs and expenses.

17.     In Count IV of the Complaint, Plaintiff Bates sues on behalf of himself, and the Tennessee File Disclosure Class, pursuant to Fed. R. Civ. P. 23(a) and one or all of the following Rules of the Federal Rules of Civil Procedure:  a) 23(b)(2); b) 23(b)(3); and/or c) 23(c)(4).

18.     Plaintiffs, individually and on behalf of the Tennessee Driver License Class, the Nationwide File Disclosure Class and the Tennessee File Disclosure Class, do not seek actual damages or compensatory damages.

## II.     JURISDICTION AND VENUE

19.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

20.     Venue is proper in this Court in the Middle District of Tennessee because Defendants are doing business in the state of Tennessee and a substantial portion of the conduct giving rise to this action occurred in the Middle District of Tennessee.

21.     Defendants are subject to personal jurisdiction in the state of Tennessee for purposes of this lawsuit.

## III.    PARTIES

22.    Plaintiff James Huff ("Plaintiff Huff" or "Huff") is a resident and citizen of Tennessee.  Huff is a "consumer" as defined under the FCRA, 15 U.S.C. § 1681a(c).  Huff has and currently holds a Tennessee driver license.  Huff has presented checks to businesses utilizing Defendants' services as described below.  Huff has also requested and received a consumer disclosure, called the "TeleCheck File Report," within five (5) years preceding the filing of this Complaint.  Huff is representative of the Nationwide File Disclosure Class.

23.    Plaintiff Torrance Bates ("Plaintiff Bates" or "Bates") is a resident and citizen of Tennessee.  Bates is a "consumer" as defined under the FCRA, 15 U.S.C. § 1681a(c).  Bates has and currently holds a Tennessee driver license.  Bates' personal identifying information was used by a prospective landlord to receive a consumer report from Defendants using Defendants' tenant screening services.  Bates has also requested and received a consumer disclosure, called the "TeleCheck File Report," within five (5) years preceding the filing of this Complaint.   Bates is representative of the Tennessee File Disclosure Class.

24.    TeleCheck Services, Inc. is a foreign corporation with its principal place of business in Texas or Colorado.  TeleCheck Services, Inc. does business in Tennessee.

25.    TeleCheck International, Inc. is a foreign corporation with its principal place of business in Texas or Colorado.  TeleCheck International, Inc. does business in Tennessee.

26.    First Data Corporation ("First Data") is a foreign corporation with its principal place of business in Georgia.  First Data does business in Tennessee.

## IV.    FACTS

### A.    Defendants' Business Operations

27.    Throughout the country, including the state of Tennessee, many businesses,

8

including merchants and retailers, accept checks and electronic fund transfers from consumers as methods of payment for goods and services. The business transactions are initiated by the consumers who wish to purchase goods or services from the businesses or merchants (hereinafter Plaintiffs refers to "businesses," "merchants" and "retailers" interchangeably).

28. Businesses desire to accept checks and electronic fund transfers as methods of payment for goods and services, yet also want to minimize the potential risk of a check or electronic fund transfer being returned as an unpaid or dishonored item, such as one returned for non-sufficient funds.

29. Defendants engage in several business operations, including but not limited to electronic commerce, payment processing services and customer account management. In their Commercial Services segment, Defendants provide credit card processing, debit card processing, check and electronic fund verification, check and electronic fund guarantee, and prepaid card services.

30. Defendants provide the services stated in the above Paragraphs, including credit card processing, debit card processing, check and electronic fund verification, and check and electronic fund guarantee, to businesses in the state of Tennessee.

31. Defendants purports that their check verification and guarantee services use Defendants' proprietary database system to assist in verifying that a check writer is a reasonable risk for a merchant; or to guarantee that approved checks presented to businesses for payment will be collectible.

32. Defendants' databases, systems and files contain information regarding consumers, including those residing in Tennessee, regarding check writing and electronic fund transfer histories. Defendants claim that they use check writing and electronic fund transfer

histories of consumers as part of their risk analysis in providing check/electronic fund verification and guarantee services to businesses.

33.     Defendants' revenues from check verification and check guarantee services are earned primarily by charging merchant fees for their services.

34.     Procedurally, when a consumer, including those in Tennessee, initiates a sales transaction with a business and presents a check or electronic fund transfer as a method of payment at the point of sale, the business processes the check or electronic fund transfer through Defendants' systems, databases and files, typically by way of a terminal or by phone.  Typically, the check or electronic fund transfer is processed by the business or merchant inputting identifiers unique to that consumer, primarily a driver license and/or bank number (MICR number, containing the bank's ABA routing number and the consumer's account number).  The transaction is then processed through Defendants' systems, databases and files.  Thereafter, the merchant receives a "code" from Defendants indicating whether the check/electronic fund transfer is accepted (a "Code 1" or approval code); declined with a "Code 4," which according to Defendants, means that there is evidence of an unpaid item, such as a returned check, in its databases, systems and files regarding the consumer, or that the bank account is closed; declined with a "Code 3," which Defendants claim is a risk-based decline regarding the consumer; or declined with a "Code 0" (Call Center Code).

35.     Under Defendants' check/electronic funds transfer guarantee service, when a business is presented a check/electronic fund transfer as a method of payment from the consumer, the transaction is submitted to and analyzed by Defendants, purportedly utilizing their databases, systems and files, which according to Defendants, include the consumer's check writing history.  Defendants then either accept or decline the check/electronic fund transfer for

warranty or guarantee coverage. If Defendants approve the check/electronic fund transfer for warranty coverage and the business accepts the check/electronic fund transfer, the business then deposits the check in its bank account or processes the electronic fund transfer. If the check/electronic fund transfer is returned as an unpaid item by the businesses' bank and the returned check/electronic fund transfer meets the requirements for warranty coverage, Defendants are required by their contract with the merchant to purchase the check/electronic fund transfer from the merchant at its face value.

36.    Defendants charge a fee for each check/electronic fund transfer they guarantee, which generally is determined as a percentage of the check/electronic fund transfer amount.

37.    Defendants also provide check verification services to merchants and generally receive a fee on each transaction processed through their databases, systems and files, even if the same check is being reprocessed by the merchant following receipt of a decline code.

38.    As part of their business operations, Defendants regularly and routinely store information regarding checks/electronic fund transfers processed through their databases, systems and files. This information includes the date and time of the transaction, merchant, identifier(s) used to process the transaction, check number, check/electronic fund transfer amount, and code provided to the merchant (such as approval, decline, Code 0, Code 1, Code 3 or Code 4).

39.    Transactions processed through Defendants databases and systems are typically stored under the identifier or identifiers used to process the transaction. For example, if a check/electronic fund transfer is processed using the MICR number only, information related to the transaction is stored under that particular identifier. If two identifiers are used to process the transaction, such as a MICR number and a driver license number, information related to the

transaction is stored under both identifiers.

40. Defendants also regularly and routinely store other information related to consumers, such as the consumer's name, address and telephone number; the number of check/electronic fund transfer transactions processed using a particular identifier (such as the driver license and MICR number), the total dollar amount of check/electronic fund transfer transactions processed using a particular identifier; and information regarding returned checks and closed bank accounts.

41. Although information is generally stored under a particular identifier, Defendants regularly and routinely link identifiers associated with a particular consumer in their databases, systems and files. For example, if a consumer presents a check/electronic fund transfer to a merchant and the merchant uses the MICR number and the driver license number to process the transaction, the two identifiers (the consumer's MICR number and driver license number) are "linked" in Defendants' systems, databases and files. Once identifiers are linked, they are used in Defendants' systems, databases and files when subsequent transactions are processed, and can affect the approval/decline code that Defendants provide to the merchant, recommending that the merchant approve or decline the check/electronic fund transfer.

42. As part of Defendants' business operations, Defendants also furnish information regarding consumers from merchants and banks related to returned checks/electronic fund transfers and closed bank accounts. For returned checks/electronic fund transfers to merchants using Defendants' guarantee service, Defendants purchase the returned checks/electronic fund transfers at face value, then inputs this information into their systems, databases and files under identifiers associated with the returned checks/electronic fund transfers and other identifiers linked to or associated with the particular consumer. In a subsequent check/electronic fund

12

transfer transaction, the merchant will receive a decline or "Code 4" decline code, and will typically reject the check/electronic fund transfer. The same is true if the consumer attempts to open a new bank account with a bank utilizing Defendants' bank account opening service. In short, Defendants effectively "block" a consumer from receiving an approval on a subsequent check/electronic fund transfer from merchants using Defendants' services, or from opening a new bank account with banks utilizing Defendants' bank account opening services, until the consumer pays Defendants for the face amount of the check, and a returned check and/or other fees. Defendants routinely and regularly store this information in their databases, systems, and consumer files.

43.     With respect to information regarding consumers from merchants who do not use Defendants' check guarantee service related to returned checks/electronic fund transfers, and from banks related to closed accounts, Defendants input this information into their systems, databases and files and as discussed in Paragraph 42, effectively "block" a consumer from receiving an approval on a subsequent check/electronic fund transfers from merchants using Defendants' check verification service; or from opening a new bank account with a bank using Defendants' bank account opening services, until the consumer "makes good" or otherwise resolves the issue with the merchant with the returned check/electronic fund transfer. In theory, if and when the consumer "makes good" or otherwise resolves the issue with the merchant which received the returned check/electronic fund transfer, that merchant reports the item as paid or resolved to Defendants, who in turn, make the proper notations in their systems, databases, and files, and then eliminates the "block."

44.     Defendants routinely and regularly store information regarding returned checks/electronic fund transfers, and payment/resolution of said returned checks/electronic fund

transfers in their databases, systems, and files.

45. As part of Defendants' business operations to collect on returned checks/electronic fund transfers purchased through their check/electronic fund guarantee service, and to assist merchants which do not utilize Defendants' check guarantee service to collect on returned checks/electronic fund transfers, Defendants regularly and routinely link and/or associate the consumer's identifiers, primarily the consumer's driver license number(s) and MICR number(s), in its databases, systems and files. In so doing, Defendants attempt to increase the likelihood of Defendants or a merchant collecting on a returned check/electronic fund transfer, by essentially blocking a consumer's check writing privileges at the thousands of merchants using Defendants' services, and/or blocking the consumer's ability to open a new checking account.

46. As part of their business operations, Defendants also offer bank account opening services to banks. Procedurally, for banks using this service, the bank inputs or provides information to Defendants, including identifiers unique to that consumer, such as driver license number and/or prior bank account numbers. The transaction is then processed through Defendants' systems, databases and files, and the bank receives information on whether there is evidence of an unpaid item associated with the consumer in Defendants' systems, databases and files (such as a returned check), as well as information regarding the consumer's prior bank account activity.

47. As part of their business operations, Defendants also offer tenant screening services to landlords. Procedurally, for a landlord using this service, the landlord inputs or provides information to Defendants, including identifiers unique to that consumer, such as driver license number and/or bank account number(s). The transaction is then processed through

14

Defendants' systems, databases and files, and the landlord receives information on whether there is evidence of an unpaid item associated with the consumer in Defendants' systems, databases and files, such as a returned check, as well as information regarding the consumer's prior bank account activity.

48.     As part of its business operations, First Data offers multiple other payment processing services to merchants, including credit and debit card acceptance. First Data offers these to merchants in product "bundles" to cover all payment processing options available at the point of sale. First Data claims to serve more than six million merchant locations and holds itself out as one of the largest, if not the largest, payment processor in the world. First Data utilizes a sales force which markets these "bundled" payment solutions, including check/electronic fund transfer verification and/or guarantee services.

49.     First Data provides its payment processing services, including the check/electronic fund transfer guarantee and verification services discussed in the preceding Paragraphs, either directly or through its wholly-owned subsidiaries, including TeleCheck Services, Inc. and/or TeleCheck International, Inc.

50.     First Data provides bank account services discussed in the preceding Paragraphs either directly or through its wholly-owned subsidiaries, including TeleCheck Services, Inc. and/or TeleCheck International, Inc.

51.     First Data collects or attempts to collect returned checks/electronic fund transfers either directly or through its wholly-owned subsidiaries, TeleCheck Services, Inc., TeleCheck International, Inc. and/or TRS Recovery Services, Inc.

52.     First Data maintains a website titled www.firstdata.com. On its website, First Data lists various product solutions and payment services that it offers to merchants, including a

15

variety of electronic payment and online transaction processing solutions, such as credit and debit card acceptance, check guarantee, check verification and other payment options.

53.     TeleCheck Services, Inc. and TeleCheck International, Inc. provide similar services to businesses and banks as alleged in the preceding paragraphs of this Complaint.

54.     First Data offers to businesses a terminal machine that supports all of its various payment processing products, including debit and credit cards, electronic check acceptance, check verification and check warranty.

55.     On its website, First Data states that TeleCheck "is part of the First Data family."

56.     Defendants claim that they have built and maintain the nation's largest system of databases and files containing check writer information, including those related to Tennessee consumers.  The databases and files containing check writer information are shared by all Defendants and are accessible by them at various locations throughout the United States.

57.     Defendants claim that they offer the most accurate check verification/guarantee services in the industry, with databases providing merchants with continually updated information, including bad check activity, automated inquiries using the consumer's identification (driver license or State ID) and checking account data.

58.     Defendants claim that through their services, they can help merchants separate good check writers from bad ones.  Defendants also claim or have claimed that they can predict "with unmatched accuracy" the probability of a check being good.

59.     Defendants engage in a common enterprise, which includes common operations related to consumer reporting.  First Data exercises exclusive dominion and control over the remaining Defendants, which are wholly-owned subsidiaries and operate as First Data's alter ego.

16

60.     First Data controls and dictates the budget of the remaining Defendants. Defendants comingle financial resources in the operation of their business segments.

61.     Defendants share or have shared the same business locations, including those in Houston, Texas, Greenwood Village, Colorado, and Atlanta, Georgia.

62.     In addition to Houston, Texas, Greenwood Village, Colorado, and Atlanta, Georgia, Defendants also maintain common offices in City of Industry, California, where both consumers and merchants are directed to forward payments.

63.     Defendants also operate several common "call centers" throughout the United States and abroad, and share common agents and employees at these facilities.  Depending on the situation, the same call center employee may represent to a consumer that they are speaking on behalf of one Defendant, while later tell a different consumer that they are speaking on behalf of another Defendant.

64.     Several of the same individuals are or were officers of both First Data and the other Defendants.

65.     Defendants share manpower and resources.  Defendants share the common databases, systems and files, as stated above, containing information regarding consumers, including check writing information, consumer debt information, collection activity and other consumer information.  These common databases and systems are accessible by Defendants' agents and employees throughout the country.

66.     Defendants compile, maintain and input information about consumers in their common databases, systems and files, including information regarding check writing histories.

67.     Defendants maintain files and other information on consumers in their databases and systems, including check writing histories.

17

68.     Defendants provide check verification, electronic fund transfer verification, check guarantee and electronic fund guarantee services to merchants and banks in the state of Tennessee.

69.     Defendants have created and implemented a uniform policy, practice and procedure for responding to consumers' requests for disclosures and information under the FCRA, including consumer requests for disclosures by telephone or in writing.

70.     In addition, Defendants have developed a uniform, standardized consumer disclosure format which is called the "TeleCheck File Report." For at least five (5) years leading up to the filing of this Complaint, Defendants routinely provide the "TeleCheck File Report" to consumers utilizing the same uniform, standardized format.

71.     During the Liability Period (five (5) years preceding the filing of this Complaint), it was and is Defendants' policy, practice and procedure to only provide information to consumers related to check/electronic fund transactions processed through Defendants' databases and systems stored under the identifier or identifiers provided by the consumer in his or her request for a consumer disclosure under the FCRA. Defendants regularly and routinely refuse or fail to provide information related to check/electronic fund transfer transactions processed under an identifier(s) linked or associated with that particular consumer.

72.     In addition, during the Liability Period (five (5) years preceding the filing of this Complaint), it was and is Defendants' policy, practice and procedure to only provide information to consumers related to returned checks (including those that Defendants' records showed remained unpaid, paid or otherwise resolved) stored under the identifier or identifiers provided by the consumer in his or her request for a consumer disclosure under the FCRA. Defendants regularly and routinely refuse or fail to provide information related to returned checks (including

18

those that Defendants' records showed remained unpaid, paid or otherwise resolved) under an identifier(s) linked or associated with that particular consumer.

73.     Defendants have and continue to willfully refuse to disclose to consumers which checkwriting history or histories were/are utilized when processing a consumer's transaction and providing consumer reports to businesses.  Specifically, and as part of Defendants' standard operating procedure, Defendants systematically and deliberately conceal how their verification/guarantee system, bank account opening and/or tenant screening services work, and/or the information which forms the basis for the decline/approval codes provided in the consumer reports to businesses, including but not limited to the fact that Defendants have taken no steps to combine, associate and/or link the checkwriting history stored under the consumer's eight-digit Tennessee driver license number, with the consumer's nine-digit Tennessee driver license number beginning with a "0," and that the failure to combine, associate and/or link this information could affect the transaction.

74.     Defendants have a policy, practice and/or procedure to provide consumers with standardized form letters and/or utilize standardized verbiage when speaking to consumers.  For example, when providing information to a consumer who received a decline code, Defendants use vague, generalized language stating that the consumer's check "did not meet the acceptance guidelines that TeleCheck has established."  Defendants willfully conceal what these guidelines are, and specifically, conceal the fact that a decline may have occurred because the consumer was viewed as a "first-time checkwriter" in Defendants' system, or a checkwriter with limited checkwriting history, due to Defendants' failure to combine checkwriting histories stored under the eight-digit and nine-digit Tennessee driver license numbers, or that a consumer's check may have been declined due to a smaller "positive" checkwriting history because Defendants failed to

19

combine checkwriting histories stored under the eight-digit and nine-digit Tennessee driver license numbers.

75.     Defendants repeatedly tell consumers only that the consumers' checks or transactions "did not meet the acceptance guidelines" that Defendants have established.  Even when consumer inquiries are escalated, Defendants' employees are strictly forbidden to deviate from the use of Defendants' standardized form letters and/or Defendants' standardized verbiage, which state generally that the consumer's check did not meet Defendants' "acceptance guidelines."   In fact, David Hogan, Vice President of Service Operations and former Vice President of Operations, testified that even he would have to stick to the general content of Defendants' standardized verbiage when speaking to a consumer in a highly escalated situation.

76.     Based on Defendants' policies, practices and procedures, it was/is virtually impossible for Plaintiffs and/or members of the putative classes to discover that Defendants have violated the FCRA by refusing or failing to associate, link and/or combine the consumer's checkwriting history stored in Defendants' databases, systems and files under the eight-digit Tennessee driver license number with the nine-digit Tennessee driver license number simply by communicating with Defendants and/or their agents.   In fact, Defendants' violations of the FCRA were only discovered in prior litigation against Defendants TeleCheck Services, Inc. and TeleCheck International, Inc., in which Defendants disclosed that a Tennessee consumer whose check was processed with the nine-digit Tennessee license number beginning with a "0" was declined because she was treated as a first-time checkwriter, despite having prior checkwriting history under the eight-digit Tennessee license number which would have resulted in an acceptance code; and that Defendants did not have a procedure in place to combine these histories.

77. Further, based on Defendants' policies, practices and procedures, it was/is virtually impossible for Plaintiffs and/or members of the putative classes to discover Defendants' processes and procedures for responding to requests for consumer disclosures under the FCRA, how Defendants collect and store information, and what file information that Defendants fail to include in disclosures to consumers pursuant to the FCRA.

78. Without information regarding Defendants' policies, practices and procedures related to the linking or association of identifiers, information regarding the manner in which Defendants store information regarding consumers, and the procedures followed when providing a TeleCheck File Report, it was impossible for Plaintiff Huff, Plaintiff Bates and members of the Nationwide File Disclosure and Tennessee File Disclosure Classes to discover that Defendants violated the provisions of 15 U.S.C. § 1681g(a)(1)-(4), by refusing or failing to provide: a) all information in the consumer's file at the time of the request; b) the sources of the information in the consumer's file at the time of the request; 3) the names of each person (or trade name of the person, if applicable) who procured a consumer report during the 1-year period preceding the date on which the request was made; and 4) the dates, original payees, and amounts of any checks upon which any adverse characterization of the consumer is based, and which is included in the file at the time of the disclosure.

**B.    Change in Tennessee's Driver License Numbering System**

79. Prior to approximately February 2002, the state of Tennessee utilized an eight-digit numbering system for its driver licenses.

80. In approximately February 2002, the state of Tennessee modified its driver license numbering system, going from an eight-digit to a nine-digit system. For Tennesseans with existing driver licenses, the modification consisted of adding a "0" to the beginning of the license

number.  For example, if the Tennessee consumer had a license number "23456789," his/her number became "023456789." For individuals obtaining a Tennessee driver license for the first time, he/she was issued a license beginning with a "1."  For example, "123456789."

81.     Although the state of Tennessee made an across the board change in its driver license numbering system in approximately February 2002, updated licenses were not sent to Tennessee license holders all at once.  Instead, as each individual renewed his/her license, they were issued a new physical license with the "0" as the first number of the nine-digit format.

82.     Prior to February 2002, Huff had a Tennessee license that was eight digits and began with the number "4."  On or about June 2, 2004, Huff received his nine-digit Tennessee license, which had the identical numbers from his previous, eight-digit Tennessee license, except that it began with a "0" based on the state of Tennessee's nine-digit numbering system.

83.     Prior to February 2002, Bates had a Tennessee license that was eight digits and began with the number "8."  On or about October 14, 2003, Bates received his nine-digit Tennessee license, which had the identical numbers from his previous, eight-digit Tennessee license, except that it began with a "0" based on the state of Tennessee's nine-digit numbering system.

84.     In January 2013, Huff requested a consumer disclosure and received a TeleCheck File Report dated January 30, 2013, which only contained information in Defendants' files related to his nine-digit Tennessee license number.  The January 30, 2013 TeleCheck File Report did not contain other information linked to or associated with Huff, such as check transactions processed under Huff's eight-digit Tennessee license number and/or bank account(s) linked to or associated with Huff.

85.     In approximately October 2009, Bates requested a consumer file disclosure and

received a TeleCheck File Report dated October 5, 2009, which was essentially blank. The October 5, 2009 TeleCheck File Report did not provide Bates with information in Defendants' files related to Bates' eight-digit Tennessee driver license number.

## V.    PROVISIONS OF THE FAIR CREDIT REPORTING ACT

86.     Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

87.     Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for: a) credit or insurance to be used primarily for personal, family, or household purposes; b) employment purposes; or c) any other purpose authorized under 15 U.S.C. § 1681b. Under 15 U.S.C. § 1681b, one of the authorized purposes listed is in connection with a business transaction initiated by the consumer.

88.     When Plaintiffs and Members of the Classes attempted and attempt to purchase goods or services from businesses utilizing Defendants' services, attempt to open a bank account at a bank utilizing Defendants' services, and/or rent from a landlord utilizing Defendants' tenant screening services, these are business transactions initiated by the consumer.

Case 3:14-cv-01832   Document 1   Filed 09/12/14   Page 23 of 42 PageID #: 23

89.     Defendants collect, gather, store, disseminate and report information to/from businesses, including banks, merchants and landlords, regarding consumers' checkwriting and bank account histories, including Plaintiffs and members of the Classes.  Defendants provide this information to businesses, banks and landlords, and are thereby providing consumer reports as defined by the FCRA.

90.     TeleCheck Services, Inc. is a "consumer reporting agency" as defined by the FCRA.  In addition to and/or in the alternative, TeleCheck Services, Inc. is a nationwide specialty consumer reporting agency as defined by the FCRA.

91.     TeleCheck International, Inc. is a "consumer reporting agency" as defined by the FCRA.  In addition to and/or in the alternative, TeleCheck International, Inc. is a nationwide specialty consumer reporting agency as defined by the FCRA.

92.     First Data Corporation is a "consumer reporting agency" as defined by the FCRA. In addition to and/or in the alternative, First Data Corporation, Inc. is a nationwide specialty consumer reporting agency as defined by the FCRA.

93.     Each time that a merchant processes a transaction through Defendants' check verification or check guarantee system, the merchant receives a "consumer report" from Defendants as defined by the FCRA.  This also includes the same check or electronic fund transfer "reprocessed" on multiple occasions because Defendants treat each as a separate transaction in its system and issues a new "consumer report" as defined by the FCRA.

94.     Each time that a bank processes a transaction through Defendants' bank account opening service, the bank receives a "consumer report" from Defendants as defined by the FCRA.

95.     Each time that a landlord processes a transaction through Defendants' tenant

screening service, the landlord receives a "consumer report" from Defendants as defined by the FCRA.

96.     Under the FCRA, a "file" is defined as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

97.     Under the FCRA, consumers have the right to obtain a disclosure from a consumer reporting agency at any time.  If a consumer requests a disclosure from a consumer reporting agency, the consumer reporting agency is required to provide the following:  1) all information in the consumer's file at the time of the request (15 U.S.C. § 1681g(a)(1)); 2) the sources of the information in the consumer's file (15 U.S.C. § 1681g(a)(2)); 3) the name of the persons, or trade names of the persons if applicable, who procured a consumer report from the consumer reporting agency during the preceding one-year period (15 U.S.C. § 1681g(a)(3)); and 4) the dates, original payees, and amounts of any checks upon which any adverse characterization of the consumer is based, and which is included in the file at the time of the disclosure (15 U.S.C. § 1681g(a)(4)).

## VI.     DEFENDANTS' FAIR CREDIT REPORTING ACT VIOLATIONS

### A.     Violations of 15 U.S.C. § 1681g(a)(1)-(4) (Nationwide File Disclosure Class)

98.     Plaintiff Huff and the Nationwide File Disclosure Class that he seeks to represent are consumers who have requested and received a disclosure from Defendants called the "TeleCheck File Report" since September 12, 2009, which only contained information related to the identifier(s) provided by Plaintiff Huff and members of the Nationwide File Disclosure Class, and which excluded additional information in Defendants' files linked or associated with Plaintiff Huff and members of the Nationwide File Disclosure Class.

25

99.     In refusing or failing to provide additional information linked or associated with Plaintiff Huff and members of the Nationwide File Disclosure Class, Defendants violated 15 U.S.C. § 1681g(a)(1) & (2), by not providing "[a]ll information in the consumer's file at the time of the request," as well as the source of the information.  This includes, but is not limited to, information regarding check/electronic fund transactions linked or associated to Plaintiff Huff and members of the Nationwide File Disclosure Class, as well as information regarding returned checks/electronic fund transfers and their status (unpaid, paid or otherwise resolved), which are linked or associated to Plaintiff Huff and members of the Nationwide File Disclosure Class.

100.     In addition, in refusing or failing to provide additional information linked or associated with Plaintiff Huff and members of the Nationwide File Disclosure Class, Defendants violated 15 U.S.C. § 1681g(a)(3) by not providing the identities of persons (including trade names, if applicable), who procured consumer reports from Defendants during the 1-year period preceding the request for a disclosure, consisting of additional check/electronic fund transactions processed through Defendants' check guarantee/check verification service and provided to merchants, banks and/or landlords.

101.     Finally, in refusing or failing to provide additional information regarding returned checks/electronic fund transfers linked or associated with Plaintiff Huff and members of the Nationwide File Disclosure Class, Defendants violated 15 U.S.C. § 1681g(a)(4) by refusing or failing to provide the dates, original payees, and amounts of any checks upon which any adverse characterization of the consumer is based, and which is included in the file at the time of the disclosure.

**B.     Violations of 15 U.S.C. § 1681g(a)(1)-(4) (Tennessee File Disclosure Class)**

102.     Plaintiff Bates and the Tennessee File Disclosure Class that he seeks to represent

are Tennessee consumers who have requested and received a disclosure from Defendants called the "TeleCheck File Report" since September 12, 2009, which only contained information related to their eight-digit Tennessee driver license number, and which excluded additional information in Defendants' files related to their nine-digit number (and vice versa).

103.    In refusing or failing to provide additional information related to the eight-digit or nine digit Tennessee license number issued to Plaintiff Bates and members of the Tennessee File Disclosure Class, Defendants violated 15 U.S.C. § 1681g(a)(1) & (2), by not providing "[a]ll information in the consumer's file at the time of the request," as well as the source of the information.  This includes, but is not limited to, information regarding check/electronic fund transactions under the eight-digit or nine digit Tennessee license numbers issued to Plaintiff Bates and members of the Tennessee File Disclosure Class, as well as information regarding returned checks/electronic fund transfers and their status (unpaid, paid or otherwise resolved), linked or associated with the eight-digit or nine-digit Tennessee license number issued to Plaintiff Bates and members of the Tennessee File Disclosure Class.

104.    In addition, in refusing or failing to provide additional information linked or associated with the eight-digit or nine-digit Tennessee license numbers issued to Plaintiff Bates and members of the Tennessee File Disclosure Class, Defendants violated 15 U.S.C. § 1681g(a)(3) by not providing the identities of persons (including trade names, if applicable), who procured consumer reports from Defendants during the 1-year period preceding the request for a disclosure, consisting of additional check/electronic fund transfer transactions processed through Defendants' check guarantee/check verification service and provided to merchants, banks and/or landlords.

105.    Finally, in refusing or failing to provide additional information regarding returned

27

checks/electronic fund transfers linked or associated with the eight-digit or nine-digit Tennessee driver license numbers issued to Plaintiff Bates and members of the Tennessee File Disclosure Class, Defendants violated 15 U.S.C. § 1681g(a)(4) by refusing or failing to provide the dates, original payees, and amounts of any checks upon which any adverse characterization of the consumer is based, and which is included in the file at the time of the disclosure.

## VII.    CLASS WIDE ALLEGATIONS

### A.    CLASS DEFINITIONS

#### 1.    Nationwide File Disclosure Class

106.    Plaintiff Huff sues on behalf of himself and other persons similarly situated pursuant to Fed. R. Civ. P. 23(a).  Plaintiff Huff is a member of the Nationwide File Disclosure Class that he seeks to represent, which consists of all individuals ("consumers" as defined the FCRA) who requested and received a consumer disclosure called the "TeleCheck File Report" since September 12, 2009, which only contained information related to the identifier(s) provided by Plaintiff Huff and members of the Nationwide File Disclosure Class, and which excluded additional information in Defendants' files linked or associated with Plaintiff Huff and members of the Nationwide File Disclosure Class.

107.    Plaintiff Huff is a member of the Nationwide File Disclosure Class because he requested and received a TeleCheck File Report containing information related to the identifiers provided by Plaintiff Huff to Defendants, and which excluded additional information in Defendants' files linked or associated with Plaintiff Huff.

#### 2.    Tennessee File Disclosure Class

108.    Plaintiff Bates sues on behalf of himself and other persons similarly situated pursuant to Fed. R. Civ. P. 23(a).  Plaintiff Bates is a member of the Tennessee File Disclosure

28

Class that he seeks to represent, which consists of all individuals ("consumers" as defined by the FCRA) who requested and received a consumer disclosure called the "TeleCheck File Report" since September 12, 2009, which only contained information related to the eight-digit Tennessee driver license number issued to Plaintiff Bates and members of the Tennessee File Disclosure Class, and which excluded additional information in Defendants' files related to the nine-digit Tennessee driver license issued to Plaintiff Bates and members of the Tennessee File Disclosure Class (and vice versa).

109.    Plaintiff Bates is a member of the Tennessee File Disclosure Class because he requested and received a TeleCheck File Report containing information related to the nine-digit Tennessee driver license number issued to him, and which excluded additional information in Defendants' files related to the eight-digit Tennessee license number issued to Plaintiff Bates.

### B.    SUMMARY OF DEFENDANTS' FCRA VIOLATIONS

110.    The rights of the Plaintiff Huff, Plaintiff Bates, the Nationwide File Disclosure Class and the Tennessee File Disclosure Class, under the FCRA have been and are being violated by Defendants. Specifically, in providing disclosures to consumers, Defendants have refused or failed to follow the requirements of 15 U.S.C. § 1681g(a)(1)-(4), by not providing: a) all information in the consumer's file at the time of the request (15 U.S.C. § 1681g(a)(1)); b) the sources of the information in the consumer's file at the time of the request (15 U.S.C. § 1681g(a)(2)); 3) the names of each person (or trade name of the person, if applicable) who procured a consumer report during the 1-year period preceding the date on which the request was made (15 U.S.C. § 1681g(a)(3)); and 4) the dates, original payees, and amounts of any checks upon which any adverse characterization of the consumer is based, and which is included in the file at the time of the disclosure (15 U.S.C. § 1681g(a)(4)). Defendants' conduct in refusing or

failing to comply with 15 U.S.C. § 1681g(a)(1)-(4) still continues, affecting the rights of Plaintiff Huff, Plaintiff Bates and members of the Nationwide Consumer File Disclosure and Tennessee File Disclosure Classes.

D. **NUMEROSITY AND IMPRACTICABILITY OF JOINDER**

111. The Classes are so numerous that it is impracticable to bring all of their members before the Court. Upon information and belief, Defendants have provided consumer disclosures to hundreds, if not thousands, of consumers nationwide, and have engaged in a uniform policy, practice and procedure of providing consumer disclosures limiting information to the identifier(s) provided by the requesting Class Member, as opposed to all information in Defendants' files linked or associated with that consumer. Finally, upon information and belief, Defendants have provided over one hundred disclosures to Tennessee consumers during the Liability Period.

112. The potential number of members of each of the two Classes can be determined from Defendants' records.

E. **COMMON QUESTIONS OR LAW AND FACT**

1. **Nationwide File Disclosure Class**

113. The prosecution of the claims of Plaintiff Huff requires adjudication of questions of law and fact common to the putative Nationwide File Disclosure Class: whether Defendants have engaged in a systematic and uniform policy, practice or procedure in refusing or failing to provide consumers with full and complete file disclosures in compliance with 15 U.S.C. § 1681g(a)(1)-(4).

114. The claims of the Plaintiff Huff and the Nationwide File Disclosure Class that he seeks to represent are embedded in common questions of facts and law. Defendants have

Case 3:14-cv-01832   Document 1   Filed 09/12/14   Page 30 of 42 PageID #: 30

engaged in a uniform and systematic refusal or failure to provide file disclosures containing information regarding identifiers that are linked or associated with Plaintiff Huff and members of the National File Disclosure Class. Thus, the common questions of law are: 1) whether Defendants' conduct violated and/or continues to violate the FCRA; 2) whether Defendants' noncompliance was and/or is a willful violation of the FCRA; 3) if willful, whether Plaintiff Huff and members of the Nationwide File Disclosure Class are entitled to statutory damages and/or punitive damages; and 4) if not willful, whether Defendants' violations of the FCRA were and/or are negligent.

115. The questions of law and fact common to the class predominate over any questions affecting only individual Class members.

## 2. Tennessee File Disclosure Class

116. The prosecution of the claims of Plaintiff Bates requires adjudication of questions of law and fact common to the putative Tennessee File Disclosure Class: whether Defendants have engaged in a systematic and uniform policy, practice or procedure in refusing or failing to provide consumers with full and complete file disclosures in compliance with 15 U.S.C. § 1681g(a)(1)-(4).

117. The claims of the Plaintiff Bates and the Tennessee File Disclosure Class that he seeks to represent are embedded in common questions of facts and law. Defendants have engaged in a uniform and systematic refusal or failure to provide file disclosures containing information regarding both the eight-digit and nine-digit Tennessee driver license numbers. Thus, the common questions of law are: 1) whether Defendants' conduct violated and/or continues to violate the FCRA; 2) whether Defendants' noncompliance was and/or is a willful violation of the FCRA; 3) if willful, whether Plaintiff Bates and members of the Tennessee File

Disclosure Class are entitled to statutory damages and/or punitive damages; and 4) if not willful, whether Defendants' violations of the FCRA were and/or are negligent.

118.    The questions of law and fact common to the class predominate over any questions affecting only individual Class members.

F.    **TYPICALITY**

119.    The claims of the named Plaintiffs are typical of the claims of the members of the Classes.  The named Plaintiffs and members of all two Classes have been and are similarly adversely affected by the systematic and uniform policy, practice and procedures complained of herein.  Specifically, the named Plaintiffs' claims, like those of members of the Classes, arise out of:  a) Defendants' common business practice or a course of conduct in refusing or failing to provide consumer disclosures containing information linked or associated with the consumer, and limiting the information provided in consumer disclosures to the identifier(s) provided by the consumer in violation of 15 U.S.C. § 1681g(a)(1)-(4) (Nationwide File Disclosure Class); and b) Defendants' common business practice or a course of conduct in refusing or failing to provide consumer disclosures containing information related to both the eight-digit and nine-digit Tennessee license number in consumer disclosures to Tennessee consumers in violation of 15 U.S.C. § 1681g(a)(1)-(4) (Tennessee File Disclosure Class).  Like members of the Classes, the named Plaintiffs' rights under the FCRA have been and are being violated by Defendants' conduct.

G.    **ADEQUACY OF REPRESENTATION**

120.    The named Plaintiffs will fairly and adequately protect the interest of the Classes in so far as they are broadly representative, as reflected in the preceding Paragraphs.  The named Plaintiffs' interests are co-extensive with those of the members of the Classes in that each would

benefit from a declaration that Defendants' standard and uniform policies, practices and procedures violate the FCRA. Plaintiffs have no interests which are antagonistic or adverse to the interest of other class members.

121.    Further, the named Plaintiffs' interests are co-extensive with those of the members of the Classes in that each would benefit from imposition of a remedy for Defendants' continued, systematic and uniform violations of the FCRA.

122.    The named Plaintiffs are willing and able to represent the Classes fairly and vigorously as they pursue their common goal through this civil action.

123.    The named Plaintiffs have also retained legal counsel experienced in litigating major class actions, including those in the field of consumer law, and who are prepared and able to meet the time and fiscal demands of class action litigation of this size and complexity. The combined interest, experience and resources of the named Plaintiffs and their counsel to litigate competently the claims of the Classes satisfy the requirements of Fed. R. Civ. P. 23(a)(4).

## H.    CERTIFICATION SOUGHT PURSUANT TO FED. R. CIV. P. 23(b)(2)

124.    Defendants have acted on grounds generally applicable to the Classes by adopting, following and utilizing standard policies, practices and procedures and common business practices in violation of the FCRA. Defendants' violation of the FCRA is not a sporadic occurrence, but is Defendants' standard operating procedure.

125.    Defendants have refused to adopt or follow policies, practices and procedures that comply with the FCRA, including but not limited to, refusing or failing to implement and follow standard policies, practices and procedures that comply with 15 U.S.C. § 1681g(a)(1)-(4).

126.    The Defendant's systematic and uniform violations of the FCRA make declaratory relief appropriate with respect to the Classes as a whole.

33

127. In addition, Defendants' uniform and standard policies, practices and procedures that violate the FCRA make final injunctive relief appropriate with respect to the Classes as a whole.

128. The relief necessary to remedy the claims of Plaintiffs is the same as that necessary for the Classes. Plaintiffs seek a declaratory judgment that Defendants have engaged in a systematic policies, practices and procedures that violate the FCRA. Plaintiffs further seek injunctive relief requiring Defendants to adopt policies, practices and procedures to comply with the FCRA, including those that comply with 15 U.S.C. § 1681g(a)(1)-(4). Specifically, Plaintiffs seek a permanent injunction against such continued violations of the FCRA. In addition, Plaintiffs seek injunctive relief which consist of restructuring Defendants' policies, practices and procedures in a manner so as to provide consumer disclosures which comply with the FCRA and contain information that is linked or associated with consumers in Defendants' databases, systems and files.

129. Declaratory relief and injunctive relief are the predominant forms of the relief sought by the Classes.

I. **CERTIFICATION SOUGHT PURSUANT TO FED. R. CIV. P. 23(b)(3)**

130. As alleged above in Paragraphs 113-118, which are incorporated by reference herein, questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members.

131. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Most individual members of the Classes have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation, the significant costs attendant to litigation on this scale, and the comparatively small, although

Case 3:14-cv-01832   Document 1   Filed 09/12/14   Page 34 of 42 PageID #: 34

significant, statutory damages to which each Class member is entitled. Absent a class action, Defendants' violations of the FCRA will continue without remedy.

132.    This action will result in an orderly and expeditious administration of claims of members of the Classes. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

133.    This action presents no difficulty that would impede its management by the Court as a class action. When liability of Defendants has been adjudicated, the damages of members of each Class can be administratively determined. A class action is superior to other available methods for the fair and efficient adjudication of each class member's claim.

## J.    CERTIFICATION SOUGHT PURSUANT TO FED. R. CIV. P. 23(c)(4)

134.    Under Fed. R. Civ. P. 23(c)(4), an action may be brought or maintained as a class action with respect to particular issues.

135.    Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23(c)(4) on the following issues: 1) whether Defendants violated the FCRA and specifically, the provisions of 15 U.S.C. § 1681g(a)(1)-(4); 2) whether Defendants refused or failed to provide information contained in their databases, systems and files when providing disclosures to consumers; 3) whether Defendants' noncompliance is a willful violation of the FCRA or alternatively, a negligent violation of the FCRA.

## COUNT I – WILLFUL VIOLATION OF THE FCRA (NATIONWIDE FILE DISCLOSURE CLASS)

136.    Plaintiffs restate and incorporate by reference Paragraphs 1 - 135 above as part of Count I of this Complaint.

137.    Plaintiff Huff and the members of the Nationwide File Disclosure Class are "consumers" under the FCRA.

35

138.    Defendants are "consumer reporting agencies" under the FCRA.  Alternatively, Defendants are "nationwide specialty consumer reporting agencies" under the FCRA.

139.    As consumer reporting agencies, Defendants are bound by the requirements of the FCRA, 15 U.S.C. § 1681 *et seq.*

140.    Defendants provide check verification, electronic fund transfer verification, check guarantee and electronic fund transfer guarantee services to businesses, merchants and retailers. Further, Defendants provide account opening verification services to banks and tenant screening services to landlords.

141.    On each occasion when a business, merchant or retailer process a consumer's check or electronic funds transfer through Defendants' systems, databases and files, Defendants provide a "consumer report" as defined by the FCRA.

142.    On each occasion when a bank utilizes Defendants' account opening verification service and the transaction is processed through Defendants' systems, databases and files, Defendants provide a "consumer report" as defined by the FCRA.

143.    On each occasion when a landlord utilizes Defendants' tenant screening service and the transaction is processed through Defendants' systems, databases and files, Defendants provide a "consumer report" as defined by the FCRA.

144.    As consumer reporting agencies, Defendants are required to provide disclosure to consumers upon request which comply with the FCRA, including but not limited to the provisions of 15 U.S.C. § 1681g(a)(1)-(4).

145.    When consumers, including Plaintiff Huff and members of the Nationwide File Disclosure Class, request a disclosure as of right under the FCRA, Defendants only provide a disclosure containing information limited to the identifiers (typically a driver license number

and/or bank account number) given to Defendants by the consumers. Defendants routinely refuse or fail to provide other file information regarding identifiers that are linked to and/or associated with the consumer, although Defendants actually use this linked and/or associated information when preparing and providing consumer reports to users, such as merchants, banks and landlords. As a result, consumers (including Plaintiff Huff and members of the Nationwide File Disclosure Class) are given incomplete file information in willful violation of 15 U.S.C. § 1681g(a)(1)-(4).

146. Plaintiff Huff and the Nationwide File Disclosure Class that he seeks to represent were subjected to a systematic and uniform policy, practice and procedure and common business practice by Defendants in violating the FCRA.

147. Defendants have and continue to violate the FCRA, including the provision contained in 15 U.S.C. § 1681g(a)(1)-(4).

148. Defendants' violations of the FCRA are willful. Despite having knowledge that there is additional information in their databases, systems and files that are linked or associated to a consumer, Defendants refuse to provide this information in the consumer disclosure called the TeleCheck File Report.

149. Plaintiff Huff and members of the Nationwide File Disclosure Class have no plain, adequate or complete remedy of law to redress these wrongs alleged herein. A declaratory judgment is their only means of securing adequate and equitable relief. Further, Plaintiff Huff and members of the Nationwide File Disclosure Class are now and will continue to suffer irreparable injury from Defendants' unlawful policies, practices and procedures unless enjoined by this Court.

150. As a result of Defendants' willful violations of the FCRA, Plaintiff Huff and

members of the Nationwide File Disclosure Class are entitled to declaratory relief, injunctive relief, statutory damages, punitive damages, attorneys' fees, costs and expenses.

## COUNT II – NEGLIGENT VIOLATION OF THE FCRA (NATIONWIDE FILE DISCLOSURE LICENSE CLASS)

151. Plaintiffs restate and incorporate by reference Paragraphs 1 - 150 above as part of Count II of this Complaint.

152. Alternatively, if it is determined that Defendants' violations of the FCRA are not willful, Defendants' violations of the FCRA are negligent. Despite having knowledge that there is additional information in their databases, systems and files that are linked or associated to a consumer, Defendants refuse to provide this information in the disclosure called the TeleCheck File Report.

153. Plaintiff Huff and members of the Nationwide File Disclosure Class have no plain, adequate or complete remedy of law to redress these wrongs alleged herein. A declaratory judgment is their only means of securing adequate and equitable relief. Further, Plaintiff Huff and members of the Nationwide File Disclosure Class are now and will continue to suffer irreparable injury from Defendants' unlawful policies, practices and procedures unless enjoined by this Court.

154. As a result of Defendants' negligent violations of the FCRA, Plaintiff Huff and members of the Nationwide File Disclosure Class are entitled to declaratory relief, injunctive relief, attorneys' fees, costs and expenses.

## COUNT III – WILLFUL VIOLATION OF THE FCRA (TENNESSEE FILE DISCLOSURE CLASS)

155. Plaintiffs restate and incorporate by reference Paragraphs 1 - 154 above as part of Count III of this Complaint.

38

156.    As consumer reporting agencies, Defendants are required to provide disclosure to consumers upon request which comply with the FCRA, including but not limited to the provisions of 15 U.S.C. § 1681g(a)(1)-(4).

157.    When Tennessee consumers, including Plaintiff Bates and members of the Tennessee File Disclosure Class, request a consumer disclosure as of right under the FCRA, Defendants improperly limit the information contained in the disclosure to either the eight-digit or nine-digit Tennessee driver license number.  For example, if the Tennessee consumer provides Defendants with an eight-digit license number, Defendants only provide information regarding the eight-digit license number, while refusing or failing to give information regarding the nine-digit license number which is identical except for a leading "0" at the beginning of the nine-digit number.  The same is true if the Tennessee consumer provides Defendants with a nine-digit number.  As a result, Tennessee consumers (including Plaintiff John Bates and the Tennessee File Disclosure Class) are given incomplete file information in violation of 15 U.S.C. § 1681g(a)(1)-(4).

158.    Plaintiff Bates and the Tennessee File Disclosure Class that he seeks to represent were subjected to a systematic and uniform policy, practice and procedure and common business practice by Defendants in violating the FCRA.

159.    Defendants have and continue to violate the FCRA, including the provision contained in 15 U.S.C. § 1681g(a)(1)-(4).

160.    Defendants' violations of the FCRA are willful.  Defendants either deliberately refuse to produce information contained in their databases, systems and files on both the eight and nine-digit numbers, or Defendants' failure to do so is reckless.

161.    Plaintiff Bates and members of the Tennessee File Disclosure Class have no plain,

adequate or complete remedy of law to redress these wrongs alleged herein. A declaratory judgment is their only means of securing adequate and equitable relief. Further, Plaintiff Bates and members of the Tennessee File Disclosure Class are now and will continue to suffer irreparable injury from Defendants' unlawful policies, practices and procedures unless enjoined by this Court.

162. As a result of Defendants' willful violations of the FCRA, Plaintiff Bates and members of the Tennessee File Disclosure Class are entitled to declaratory relief, injunctive relief, statutory damages, punitive damages, attorneys' fees, costs and expenses.

## COUNT IV – NEGLIGENT VIOLATION OF THE FCRA (TENNESSEE FILE DISCLOSURE LICENSE CLASS)

163. Plaintiffs restate and incorporate by reference Paragraphs 1 - 162 above as part of Count IV of this Complaint.

164. Alternatively, if it is determined that Defendants' violations of the FCRA are not willful, Defendants' violation of the FCRA are negligent.

165. Plaintiff Bates and members of the Tennessee File Disclosure Class have no plain, adequate or complete remedy of law to redress these wrongs alleged herein. A declaratory judgment is their only means of securing adequate and equitable relief. Further, Plaintiff Bates and members of the Tennessee File Disclosure Class are now and will continue to suffer irreparable injury from Defendants' unlawful policies, practices and procedures unless enjoined by this Court.

166. As a result of Defendants' negligent violations of the FCRA, Plaintiff Bates and members of the Tennessee File Disclosure Class are entitled to declaratory relief, injunctive relief, attorneys' fees, costs and expenses.

## PRAYER FOR RELIEF

167.    WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes that they seek to represent, request the following relief:

a.    Acceptance of jurisdiction of this cause;

b.    Certification of the case as a class action maintained under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(2);

c.    In addition to or in the alternative, certification of the case as a class action maintained under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3);

d.    In addition to or in the alternative, certification of the case as a class action maintained under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(c)(4);

e.    Designation of the Plaintiff Plaintiff Huff as representative of the Nationwide File Disclosure Class, and Plaintiff Bates as representative of the Tennessee File Disclosure Class; and their counsel of record as counsel for the Classes;

f.    A declaratory judgment that Defendants failed to provide information to consumers in their consumer disclosures as required under the Fair Credit Reporting Act, including the provisions contained in 15 U.S.C. § 1681g(a)(1)-(4);

g.    A declaratory judgment that Defendants' violations of the Fair Credit Reporting Act were willful or in the alternative, negligent;

h.    A preliminary and permanent injunction against Defendants from further violations of the Fair Credit Reporting Act;

i.    An Order requiring Defendant to initiate and implement policies, practices and procedures that: (i) remedy Defendants' past and present violations of the Fair Credit Reporting Act; and (ii) eliminate the continuing violations of the Fair Credit Reporting Act.

j.   An Order requiring Defendants to initiate and implement policies, practices and procedures for complying with the Fair Credit Reporting Act, including those related to properly providing information to consumers as required under 15 U.S.C. § 1681g(a)(1); and specifically, to provide additional information to consumers which is linked to or associated with the consumers;

k.   An award statutory damages if Defendants are found to have willfully violated the Fair Credit Reporting Act;

l.   An award of punitive damages if Defendants are found to have willfully violated the Fair Credit Reporting Act;

m.   An award of prejudgment interest if Defendants are found to have willfully or negligently violated the Fair Credit Reporting Act;

n.   An award of litigation, costs and expenses, including reasonable attorney's fees to the Plaintiffs and to members of the Classes;

o.   That a jury try this cause; and

p.   Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: /s/ Martin D. Holmes _____
       Martin D. Holmes, # 012122
       Fifth Third Center, Suite 1401
       424 Church Street
       Nashville, TN 37219
       (615) 244-6538

*Attorneys for Plaintiffs and the Putative Classes*
